Because of our reversal of the judgment of conviction and remand of this cause for a new trial, we address at length only one of the multiple issues presented in this death penalty case. The issue on which our reversal is based is addressed under Part V of the Court of Criminal Appeals' opinion, Lynn v.State, 477 So.2d 1365 (Ala.Cr.App. 1984). We quote the following extract therefrom:
 "Prior to calling Garrett Marcus Strong [an admitted accomplice to the crime] to testify, the prosecution made an oral motion in limine which was argued in chambers, outside the presence of the jury. The motion requested that Counsel for the defendant be precluded from any inquiry into Strong's juvenile record. The trial court granted the motion, stating that such evidence was not admissible for impeachment purposes and instructing Lynn's lawyers not to mention Strong's juvenile record in any way. . . .
". . . .
 "Appellant construes [Code 1975, § 12-15-72] and the remainder of the Juvenile Code as containing nothing `which specifically states that a juvenile conviction cannot later be utilized for purposes of impeaching a juvenile's testimony in a case where he is not a party.' *Page 1386 
 "There is no express statutory proscription of the use of prior juvenile adjudications for impeachment of a non-party witness. The construction that Lynn urges upon the court, however, flies in the face of the philosophy underlying the juvenile adjudication process. The legislature intended the Juvenile Code to be a means of rehabilitation for those within its coverage, while protecting them from some of the penalties of the adult criminal justice system. Section 12-15-72 states that juvenile adjudications are not considered criminal convictions in the traditional sense. Children adjudicated under the Juvenile Code do not incur civil disabilities inherent with adult criminal convictions. Furthermore, and most importantly in this context, evidence of a juvenile adjudication is available for character proof only under the limited scope of post-conviction sentencing hearings or probationers' reports. To insist, therefore, that a juvenile record is admissible to impeach the testimony of a nonparty juvenile witness is entirely inconsistitent with the juvenile adjudication process.
". . . .
 "Lynn further seeks reversal of his conviction on constitutional grounds allegedly arising from the trial court's grant of the prosecution's motion in limine. Appellant contends that under the holding of the United States Supreme Court in Davis v. Alaska, [415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)], the present construction of the Alabama Juvenile Code which precludes cross-examination of a witness relative to his juvenile record violates both the Sixth Amendment of the United States Constitution and Article I, § 6, of the Alabama Constitution of 1901.
 "Both of these constitutional provisions guarantee a criminal defendant's right to confront witnesses against him [including the right to cross-examine]. . . . Lynn's reliance on Davis for the proposition that defendants should be permitted to cross-examine witnesses against them as to their juvenile records for impeachment purposes, however, is misplaced. The Davis decision simply does not so hold.
 "In Davis, the trial court granted the State's motion in limine precluding the defendant from attempting to show a State witness's bias by questioning him regarding his juvenile record. In reversing the conviction, the Supreme Court distinguished efforts to impeach generally from efforts to prove a witness's bias:
 "`Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness. By so doing, the cross-examiner intends to afford the jury a basis to infer that the witness' character is such that he would be less likely than the average trustworthy citizen to be truthful in his testimony. The introduction of evidence of a prior crime is thus a general attack on the credibility of the witness. A more particular attack on the witness' credibility is effected by means of cross-examination directed towards revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970).'"
"415 U.S. at 316, 94 S.Ct. at 1110.
 "The Court held, therefore, that because the questioning prohibited by the trial court's order sought to establish bias, *Page 1387 
rather than merely casting doubt on the witness's veracity by revealing his juvenile record, Davis's right to confrontation under the Sixth Amendment had been abridged.
 "Nothing in the record on appeal in the case sub judice indicates an intent by Lynn's lawyers to attempt to show any bias of Garrett Marcus Strong. In fact, in arguing the motion, defense counsel insisted that evidence of Strong's juvenile record `would go a long way . . . towards destroying his credibility.' It is our holding, therefore, that appellant's right to confront the witness was not violated and that the trial court acted properly in granting the State's motion in limine."
We disagree with the Court of Criminal Appeals' conclusion that the State's interest in protecting the anonymity of juvenile offenders is paramount to Defendant's right to effectively cross-examine an admitted accomplice to the crime. We hold, on independent State grounds (Ala. Const. 1901, Art. I, § 6; Code 1975, § 12-21-137), that Defendant's right to thorough and sifting cross-examination was unduly hampered by the trial court's granting of the State's motion to preclude defense counsel from making any reference to Strong's juvenile record.
It is not an overstatement to assert that Strong's testimony contributed to this Defendant's being sentenced to the electric chair. In exchange for his sworn statement, shifting the bulk of the blame for the homicide away from himself and onto Defendant Lynn, Strong was offered, and he received, a 30-year sentence for the noncapital offense of burglary. Because of their relationship in the joint commission of this horrible crime and the overwhelming weight of Strong's testimony against Lynn, constitutional considerations mandate that Defendant not be restricted in his cross-examination of Strong as to any matters of probative worth.
It is not our purpose to be critical of the State's trial tactics in dealing with one accomplice in order to strengthen its case against the other one. When handled in a professional manner (and nothing here indicates otherwise), such a "trade-off" is entirely permissible; but, by the same token, this very fact, with its inherent potential for witness bias, cannot be thrust beyond the Defendant's legitimate reach of cross-examination. The rules of fair play, as contemplated by the constitutional guarantee of witness confrontation and as implemented by statute, place in the defendant's arsenal the concomitant right to subject that witness and his credibility, which necessarily includes his potential bias and self-interest, to cross-examination, including use of his juvenile record.
Although our reversal is based on the sole ground of the trial court's granting of the State's motion in limine, we will comment briefly on one other of Petitioner's allegations of error. The State, acknowledging the trial court's error when charging the jury on the requisite degree of corrobative proof of an accomplice's testimony, claims lack of prejudice in light of the correctness of the full charge. From our review of the totality of his instructions, we are constrained to view the trial judge's "slightest degree" remark as a mere inadvertence which is not apt to recur upon a new trial of this cause.
We have reviewed each of Petitioner's remaining contentions for reversal and find no other error.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
EMBRY, J., not sitting. *Page 1388