[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1293 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1294 
The appellant, Charles Earl Bone, Jr., was indicted for capital murder for shooting and killing a minor with a pistol while the victim was seated in a motor vehicle. See §13A-5-40(a)(17), Ala. Code 1975. He was found guilty of the lesser included offense of murder on June 14, 1996, and was sentenced to life imprisonment.
The evidence indicated that on May 24, 1994, the appellant and three other juveniles were driving through the Rolling Hills School area in Huntsville, Alabama, while smoking a "blunt" (a cigar filled with marijuana). The appellant was in the front passenger seat. The owner of the vehicle was in the backseat because he had been rolling the blunt. Another vehicle, in which the victim and several other juveniles were riding, passed the vehicle the appellant was in, and began making gang signs ("throwing signs") in the rear window. The appellant and those with him were allegedly members of the FOLK gang (also known as the Disciples), and the victim and those with him were allegedly members of the Bloods gang. The appellant's vehicle followed the victim's vehicle until the victim's vehicle stopped. The occupants of the victim's vehicle got out and began walking toward the appellant's vehicle while signaling for the people in the appellant's vehicle to get out of the car. However, the driver of the appellant's vehicle turned the vehicle around and drove in the other direction. The witnesses in the appellant's vehicle testified that they believed the individuals in the victim's vehicle probably had guns, although they never actually saw any guns. The victim's vehicle started following the appellant's vehicle, and the passengers in the victim's vehicle continued to "throw signs."
The appellant's vehicle slowed down to turn right and merge into traffic on another road. Two witnesses from the victim's vehicle testified that at that point the person in the front passenger seat of the appellant's car (whom they identified in photographs and in court as the appellant) rolled down the window and fired a gun into their car, shooting the victim in the head. Two witnesses from inside the appellant's vehicle also testified that they heard three gunshots and that they saw the appellant come back in the car from leaning out the window with the gun in his hand, but testified that they did not realize at that time that he had actually shot anyone when he fired the gun. The appellant testified that he heard shots outside the vehicle, but that he did not fire the gun and did not know who did. The State's ballistics expert testified that the gun found in the appellant's vehicle was the one that fired the *Page 1295 
shot that killed the victim. The jury found the appellant not guilty of capital murder, but found him guilty of the lesser included offense of murder.
 I.
The appellant argues that the trial court erred in refusing to give a jury instruction on the accomplice status of prosecution witnesses. Relying on Willis v. State,570 So.2d 760 (Ala.Cr.App. 1990), the appellant asserts that the jury should have been instructed as to the definition of an accomplice and the "questionable nature" of an accomplice's testimony.
We note that the appellant's written requested jury charge merely defined complicity, and did not address the credibility of an accomplice's testimony. Thus, his written request in itself would not be adequate to preserve this issue for appellate review. However, after the jury was charged by the trial court, the appellant orally stated a specific objection to the jury charges and specifically stated the additional instruction he wished given to the jury. Because the objection and the requested instruction were specifically stated before the jury began its deliberations, the issue has been preserved for appellate review. See Lee v. State, 562 So.2d 657
(Ala.Cr.App. 1989).
This court has stated:
 " ' An accomplice is defined as "an associate in crime; a partner or partaker in guilt." Darden v. State, 12 Ala. App. 165, 167, 68 So. 550, 551
(1915).' Jacks v. State, 364 So.2d 397, 401-02
(Ala.Cr.App.), cert. denied, 364 So.2d 406 (Ala. 1978). See also Brownlee v. State, 545 So.2d 151, 159 (Ala.Cr.App. 1988), aff'd, 545 So.2d 166
(Ala.), cert. denied, 493 U.S. 874, 110 S.Ct. 208, 107 L.Ed.2d 161 (1989). This term has also been held to include all who are concerned in the crime, whether as principals, as accessories, or as aiders or abetters. 23 C.J.S. Criminal Law § 998 (1989).
 " 'The test for determining whether a witness is an accomplice is whether he or she could have been indicted and convicted for the offense charged, either as principal or accessory.' Ex parte Dial, 387 So.2d 879, 881 (Ala. 1980), quoting Russell v. State, 365 So.2d 343 (Ala.Cr.App. 1978). See also Ex parte Bates, 461 So.2d 5,6 (Ala. 1984); Brownlee, supra, 545 So.2d at 160; Jacks, supra, 364 So.2d at 401."
Willis, 570 So.2d at 761.
The appellant argues that, because his companions in the vehicle could have been charged in this crime, the jury should have been instructed that their testimony was questionable. However, when a defendant contends that a witness is an accomplice, he has the burden of proving that fact. Cumbo v.State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979). Where there is no conflict in the testimony, the issue of whether a witness is an accomplice is a question of law for determination by the trial court. Id. In this case, both alleged accomplices testified that the appellant fired the gun, that they did not know he was going to shoot at the victim's car, and that they did not know that he actually hit anyone when he fired the gun. The appellant denied firing the gun, and testified that he did not think the shots even came from the car. The appellant did not present any evidence to indicate that anyone else in the vehicle fired the gun or that the alleged accomplice witnesses assisted him in committing this crime in any way. Since the appellant did not present evidence that the witnesses in question were accomplices, the trial court did not err in denying his request for jury charges on accomplice testimony.
The State argued that even if the witnesses were accomplices, the two witnesses from the appellant's vehicle presented sufficient corroboration of each other's testimony because their stories were consistent with each other. This is not a correct statement of the law, since the general rule is that the testimony of an accomplice cannot be corroborated by the testimony of another accomplice. Ward v. State, 376 So.2d 1112
(Ala.Cr.App.), cert. denied, 376 So.2d 1117 (Ala. 1979). However, the two witnesses who were in the vehicle with the appellant were not the only witnesses for the State. Two of the State's witnesses were in the other car with the victim when he was shot, and they both identified the appellant as the one who *Page 1296 
fired the gun. Further, the appellant's own testimony placed him in the vehicle at the time of the shooting and in the seat from which evidence showed that the shots were fired. Thus, unlike the situation in Willis, where there was no corroboration of the testimony of the accomplice, the corroborating evidence against the appellant was more than adequate to support the conviction without the testimony of the two alleged accomplice-witnesses.
 II.
The appellant next argues that "the trial court erred in disallowing the full disclosure to the appellant of juvenile records of the state's witnesses to impeach accomplice witness[es] by juvenile adjudication records." The trial court conducted an in-camera review of the juvenile records of the witnesses, and advised the appellant of the few matters from the records which the trial court believed may have been relevant to the defense. However, before the trial, the trial court ruled that the juvenile records were inadmissible into evidence. The substance of the appellant's argument deals with the admissibility of juvenile records to impeach accomplice witnesses rather than the disclosure of those records, so we will focus our discussion on the question of whether the juvenile records were admissible into evidence for purposes of impeachment.
Rule 609(d) of the Alabama Rules of Evidence precludes the use of juvenile or youthful offender adjudications for impeachment of a witness by evidence of conviction of a crime. However, "Rule 609(d) does not disallow impeachment by use of a juvenile or youthful offender adjudication when such impeachment is constitutionally required." C. Gamble,McElroy's Alabama Evidence, § 145.01(4) (5th ed. 1996).
The appellant cites Ex parte Lynn, 477 So.2d 1385 (Ala. 1985), in arguing that the State's witnesses' juvenile records were admissible for impeachment purposes, and that the denial of access to those records was a denial of his Sixth Amendment right to confront witnesses and to have proper assistance of counsel. In Lynn, the Alabama Supreme Court made an exception to the general rule excluding juvenile adjudications from evidence. However, Lynn was limited to situations where the witness was an admitted accomplice of the defendant in the commission of a capital offense. In Loyd v. State,580 So.2d 1370 (Ala.Cr.App. 1990), rev'd on other grounds, 580 So.2d 1376
(Ala. 1991), we addressed the scope of Lynn, stating:
 "Appellant cites the case of Ex parte Lynn, 477 So.2d 1385 (Ala. 1985), for the proposition that in the instant case, the victim's prior juvenile adjudication was admissible. Lynn is factually distinguishable from the present case in that in the Lynn case the witness sought to be impeached by virtue of his juvenile record was an accomplice to the commission of a capital offense. Our Supreme Court held that the state's interest in protecting the anonymity of juvenile offenders is not paramount to a defendant's right to effectively cross-examine an admitted accomplice to the crime.
 " 'Because of their relationship in the joint commission of this horrible crime and the overwhelming weight of Strong's testimony against Lynn, constitutional considerations mandate that Defendant not be restricted in his cross-examination of Strong as to any matters of probative worth.'
"Lynn, 477 So.2d at 1387.
 "The decision in Lynn departed from the well established rule of general exclusion of prior juvenile convictions in any instance. The facts in Lynn are clearly distinguishable from the present case. We see no reason to deviate from the general rule. The trial court committed no error in this instance."
Loyd, 580 So.2d at 1372.
If the appellant had presented evidence that the witnesses in question were his accomplices in the commission of this crime, and if their testimony had not been corroborated by independent witnesses, then the juvenile records may have been admissible. However, as discussed in Part I of this opinion, the appellant had the burden of presenting evidence to support his assertion that the witnesses were his accomplices. Cumbo v. State, supra. Where there was no conflict in *Page 1297 
the testimony, the question of whether the witnesses were accomplices was a question of law for determination by the trial court. Id. The trial court did not err in excluding the juvenile records from evidence.
 III.
The appellant argues that the trial court erred in not instructing the jury on the lesser included offense of manslaughter. He asserts that the jury should have been charged both on heat of passion manslaughter under § 13A-6-3(a)(2), Ala. Code 1975, and on reckless manslaughter under §13A-6-3(a)(1), Ala. Code 1975.
Section 13A-6-3(a), Ala. Code 1975, defines the crime of manslaughter as follows:
 "(a) A person commits the crime of manslaughter if:
 "(1) He recklessly causes the death of another person, or
 "(2) He causes the death of another person under circumstances that would constitute murder under Section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself."
 A.
The appellant first argues that the jury should have been instructed on the "heat of passion" manslaughter of §13A-6-3(a)(2), Ala. Code 1975, due to the animosity between the rival gang members, and the threatening gestures being made by the occupants of the victim's vehicle while following the appellant's vehicle. It is true that "the mere appearance of imminent assault may be sufficient to arouse heat of passion."Cox v. State, 500 So.2d 1296, 1298 (Ala.Cr.App. 1986). However, mere words or gestures will not reduce a homicide from murder to manslaughter. Harrison v. State, 580 So.2d 73 (Ala.Cr.App. 1991). Threatening hand gestures from the occupants of one vehicle to another do not constitute imminent assault, and are not adequate legal provocation for firing a gun into a vehicle three times. The trial court did not err in refusing to charge the jury on heat of passion manslaughter.
 B.
The appellant also argues that the jury should have been instructed on reckless manslaughter under § 13A-6-3(a)(1), Ala. Code 1975. The State failed to respond to this issue in its brief. The appellant appears to argue that the shooting was merely reckless because testimony indicated that the gun was not a target grade pistol, that it was designed only for close range, and that it would be difficult to shoot it accurately from a moving vehicle. Essentially, the appellant asserts that the difficulty involved in accurately shooting under these conditions means that the shooting must have been merely reckless. The appellant does not cite any authority for such a proposition, and we find the argument to be without merit. The difficulties involved in successfully shooting the victim do not mean that the appellant must have been acting recklessly when he fired the gun.
We further note that the appellant testified that he did not shoot at the victim, and that he did not know who fired the gun. The witnesses to the crime identified the appellant as the person who fired the gun, and there was no testimony to indicate that the shooting was the result of reckless or careless behavior. While the appellant's denial of shooting the gun does not necessarily preclude him from having a jury instruction on a lesser included offense, the absence of any evidence to support a theory of a reckless shooting does prevent him from receiving the lesser included offense instruction. In Ex parte Stork, 475 So.2d 623 (Ala. 1985), the Alabama Supreme Court reviewed the issue of whether a defendant is entitled to a jury charge on a lesser included offense when he denies committing the crime itself. The Alabama Supreme Court refused to consider the defendant's testimony a bar to giving the charge, and held that a defendant is entitled to the charge on the lesser included offense as long as the charge is "based upon any material hypothesis which the evidence in his favor tends to establish." Id. at 624. In this case, there was never any evidence offered to support a theory that the shooting was the *Page 1298 
result of merely reckless conduct. Thus, there was no material basis for a theory of reckless manslaughter. The trial court did not err in refusing to charge the jury on reckless manslaughter.
 IV.
The appellant argues that the trial court erred in refusing his requested jury charge of criminal assistance. The appellant did submit a written jury charge defining criminal assistance as stated in § 13A-10-42, Ala. Code 1975, but his requested charge did not address how a jury should consider that factor in weighing the credibility of the witnesses. However, when making objections to the jury charges as given by the trial court, the appellant specifically requested that the jury be instructed that whether a witness had rendered criminal assistance was a factor to be considered in weighing the credibility of that witness. The trial court refused to give the instruction.
The appellant argues that one of the witnesses was guilty of criminal assistance because he hid the gun after the shooting. The witness testified that he owned the car, that he was riding in the backseat so that he could roll the blunt, that he owned the gun and kept it under the front seat of the car, that he did not give the gun to the appellant and did not know that the appellant had the gun, that he did not know the appellant was going to shoot the gun, that he did not know at the time that the appellant had actually hit anyone when he fired the gun, that he did not know at that time that anyone had been killed, and that he hid the gun in his car when they were at a friend's house because he did not want to get charged with carrying a concealed weapon if the police came around. The appellant citesGodfrey v. State, 333 So.2d 182 (Ala.Cr.App. 1976), to argue that the witness's conduct constituted criminal assistance. However, Godfrey dealt with a situation where a defendant was on trial for criminal assistance for acting as the driver for two persons committing a burglary. This witness was never charged with a crime in connection with this incident, was not on trial in this case, and was never shown to have engaged in any conduct that furthered the commission of the murder. The appellant does not cite any authority for the proposition that the trial court's failure to charge the jury on criminal assistance by a witness was reversible error, and we do not find this to be error under these facts.
We addressed a similar requested jury instruction in Part I of this opinion concerning accomplice witnesses, and the same analysis can be applied to this request for an instruction on criminal assistance. The witness did testify that he hid the gun. However, he also testified that he did not know that the appellant had shot anyone, and that he hid the gun in the car so that he would not be charged with carrying a concealed weapon if the police came around. There was never any evidence presented that this witness rendered criminal assistance to the appellant in the commission of this offense or afterwards. When a defendant contends that a witness is an accomplice, the defendant has the burden of proving that fact. Cumbo v. State,368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877
(Ala. 1979). Where there is no conflict in the testimony, the issue of whether a witness is an accomplice is a question for determination by the trial court. The trial court determined that this witness had not rendered criminal assistance to the appellant, and did not err in refusing to charge the jury on criminal assistance.
Even if there was adequate evidence to establish criminal assistance by the witness, this witness's actions would only be relevant in terms of weighing the credibility of his testimony. His testimony concerning the appellant's criminal conduct was corroborated by several other witnesses, so, as we similarly discussed in Part I of this opinion, any error by the trial court in failing to give this instruction would be harmless.
 V.
The appellant argues that the State used its peremptory strikes in a racially discriminatory manner in violation of the United States Supreme Court's holding in Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The appellant's brief transcribes the hearing on the Batson motion, but makes no arguments as to why any *Page 1299 
of the State's strikes were improper, other than by reciting the general principles of Batson. After the prosecution stated its race-neutral reasons for the strikes, the appellant did not make any further argument to challenge the strikes. The trial court made a finding that all of the strikes by the State were race-neutral. It is within the discretion of the trial court to determine if the State's peremptory challenges were motivated by intentional racial discrimination, and the trial court will be reversed only if its determination is clearly erroneous. Exparte Lynn, 543 So.2d 709 (Ala. 1988). No reason was given as to why any of the strikes were improper, and we find no error in the trial court's denial of the appellant's motion.
 VI.
The appellant argues that the trial court erred in limiting his cross-examination of the State's witnesses. He first complains that he was not allowed to thoroughly cross-examine one witness concerning the source of the marijuana smoked in the car prior to the shooting, after that witness testified that he did not remember the source. He also complains that he was not allowed to cross-examine the State's firearms expert about a 9 mm. handgun that was not involved in this case, but was alleged to have belonged to one of the witnesses at one time.
"The scope of cross-examination must of necessity be committed to the discretion of the trial court, and in the absence of abuse of discretion, the trial court's ruling will not be reversed." Lomax v. Speed, 507 So.2d 455, 458 (Ala. 1987). Although a defendant has a right to a thorough and sifting cross-examination of a witness, that right does not extend to matters that are collateral or immaterial. Burton v.State, 487 So.2d 951 (Ala.Cr.App. 1984). A trial court does not abuse its discretion in limiting questioning on collateral or immaterial matters. Id.
The source of the marijuana was a collateral or immaterial matter, as was the witness's prior ownership of a 9 mm. handgun. The trial court did not abuse its discretion in limiting questioning on these matters.
 VII.
The appellant argues that the trial court erred in not allowing a defense witness to testify as to "statements made by an accomplice." The trial court excluded testimony from a witness about statements made by another witness, who the appellant alleges was an accomplice to the crime. The appellant cites Kennard v. State, 531 So.2d 934 (Ala. 1986), for the proposition that statements made by an accomplice are admissible into evidence. However, because we have upheld the trial court's determination that the witness was not an accomplice, we find that the trial court properly excluded the hearsay testimony. Further, the appellant did not make an offer of proof as to what testimony would have been elicited from this witness. "Where a question, on its face, calls for inadmissible testimony, without an offer of proof as to what the witness's expected response would be, the trial court does not err in sustaining an objection to the question." Mosley v.State, 644 So.2d 1299, 1302 (Ala.Cr.App. 1994). We find that the trial court did not err in excluding the hearsay testimony of the witness.
 VIII.
The appellant argues that the trial court erred in allowing into evidence a stack of photographs used by the detective to identify the appellant, as opposed to a "proper" photographic lineup. However, the substance of his argument is that the appellant had a constitutional right to have counsel present during the photographic lineup. The appellant cites UnitedStates v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149
(1967), to argue that a post-indictment lineup is a critical stage of the prosecution at which an accused is entitled to the aid of counsel. However, this was a photographic lineup conducted before the appellant was indicted. A defendant does not have a constitutional right to have counsel present at a pre-indictment lineup. Kirby v. Illinois, 406 U.S. 682,92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). The trial court did not err in admitting the photographs or the identification based on those photographs. *Page 1300 
 IX.
The appellant argues that the State "committed prosecutorial misconduct by bolstering the reputation of the lead investigator, and thereby substantially affecting the jury so as to prejudicially affect the appellant." The appellant complains of two statements made by the prosecutor concerning the credibility of investigator Bud Parker. First, he asserts that the following remark was improper:
 "[H]ow in the world did he build the reputation that he has built? How in the world has he successfully investigated more than 400 murders, and either 18 or 40 that he has been the lead investigator on? How has he built a reputation and gained the success he has by lying? Think about this: How long do you think he would even keep his job if he were to lie. If he was a perjurer — and I ask you. You make the judgment. Use your common sense."
The appellant made no objection to this remark by the prosecutor. Where no objection is made to an allegedly improper remark, no issue is preserved for appellate review. Lee v.State, 562 So.2d 657 (Ala.Cr.App. 1989).
The second remark claimed to be improper is as follows:
 "They told you that Bud Parker got it into his mind that he was going to get Chuck Bone and he went after him and forgot everybody else. Ladies and gentlemen, that professional investigator told you that he had probable cause to believe that it was Chuck Bone and then he went looking for Chuck Bone, and he never turned back because that foundation kept building and building until the point where he had made his determination, for whatever that is worth, that this was an independent act on the part of Chuck Bone, and nobody else helped him, nobody else told him to — "
The appellant's objection to this argument and the court's response follows:
 "MR. SMITH: We object to the argument that the investigator made a determination of guilt as being improper argument.
"THE COURT: Well, the jury heard the evidence."
The trial court has broad discretion in determining what is permissible argument, and its decision will not be reversed absent an abuse of that discretion. Butler v. State,659 So.2d 1021 (Ala.Cr.App. 1995). The prosecutor's comments, both on the investigator's experience and on the investigator's determination that the appellant acted independently, were legitimate inferences from the investigator's testimony. The trial court did not abuse its discretion in permitting the argument.
 X.
The appellant's final argument is that the evidence was insufficient to sustain the appellant's conviction for murder, or alternatively, that the verdict was contrary to the law or the weight of the evidence.
 "In determining whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, we must accept as true the evidence introduced by the state, accord the state all legitimate inferences therefrom, and view the evidence in the light most favorable to the prosecution. McMillian v. State, 594 So.2d 1253
(Ala.Cr.App. 1991); Faircloth v. State, 471 So.2d 485 (Ala.Cr.App. 1984), aff'd, 471 So.2d 493 (Ala. 1985); Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.), cert. denied, 368 So.2d 877 (Ala. 1979). Here, there was sufficient evidence introduced to present the case to the jury. 'Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case.' McMillian, 594 So.2d at 1263."
Underwood v. State, 646 So.2d 692, 695 (Ala.Cr.App. 1993).
The State presented the testimony of several witnesses that the appellant fired a pistol out of the window of a car, and that one of the bullets struck the victim in the head. The victim died as a result of the gunshot wound. A ballistics expert matched the bullet recovered from the victim's head to a pistol found in the vehicle that the appellant was in at the time of the shooting. The State made a prima facie showing of the appellant's guilt, and the case was properly submitted to *Page 1301 
the jury. Both the law and the evidence support the jury's verdict of the appellant's guilt of murder. The trial did not err in denying the appellant's motion for judgment of acquittal.
For the foregoing reasons, the judgment in this cause is affirmed.
AFFIRMED.
All judges concur.